OPINION
Defendant-appellant Voni-Kevin Brewer appeals from his conviction for Aggravated Robbery with a firearm specification. He contends that the conviction is against the manifest weight of the evidence. From our review of the record, we are satisfied that the conviction is supported by the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I
A Taco Bell restaurant located on North Main Street in Dayton was robbed at approximately 10:30 p.m. on February 9, 1999. Only three employees were working at the time. The robber, who wore a nylon stocking over his face, demanded money from the restaurant safe. The safe was on a timed lock, which made it impossible to open. The robber then obtained $295 from the drive-thru cash drawer, put the employees in a walk-in cooler and placed a thermometer in the door handle to prevent the employees from opening the cooler door. While in the cooler, the employees used a drive-thru headset to ask a customer to call the police.
Upon their arrival, the police freed the employees and conducted a search of the premises. The robber's clothes were found in the customer restroom. However, the hair found on the clothing and the nylon stocking did not match samples submitted by Brewer. The police also found fingerprints in the bathroom, which did not match Brewer's.
The employees gave written statements to the police. None of the statements identified Brewer as the robber. However, the following day, Amy Dodson positively identified Brewer as the robber. One employee, Giovanni Chenault, testified that she could not be positive as to identification. The third employee, Theodora Taylor, testified that the robber was not Brewer.
Brewer was subsequently charged by indictment with one count of Aggravated Robbery in violation of R.C. 2911.01(A)(1), with a firearm specification in violation of R.C. 2929.14 and 2929.145. A jury found Brewer guilty as charged, a conviction was entered, and he was appropriately sentenced. From his conviction and sentence, Brewer appeals.
 II
Brewer's sole Assignment of Error is as follows:
 APPELLANT'S CONVICTION FOR AGGRAVATED ROBBERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Brewer contends that his conviction is against the manifest weight of the evidence, because the State failed to establish his identity as the robber. Specifically, he argues that the testimony of the State's eyewitness, Amy Dodson, is not credible, and that the testimony of the other witnesses indicates that he was not the robber. He also argues that his alibi evidence deserves greater weight than the evidence presented by the State.
When the weight of the evidence is challenged, an appellate court sits as a "thirteenth juror" and may register its disagreement with the determinations of the fact-finder. State v.Thompkins (1997), 78 Ohio St.3d 380, 388. The appellate "court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., at 387. From the last sentence quoted above it is clear that we must accord substantial deference to the fact-finder, and reverse on a manifest weight review only in extraordinary cases. We have reviewed the entire record in this case, and conclude that the conviction was not against the manifest weight of the evidence.
Brewer contends that Amy Dodson's identification of him as the robber must be discredited because Dodson: (1) had not worked with Brewer for as long of a period of time as she originally testified; (2) only viewed the robber, who was wearing a nylon stocking over his head, for a few minutes; (3) incorrectly testified as to the color of the coat worn by the robber; (4) thought it "strange" that the robber knew where the safe, cooler and security camera were located in the restaurant; and (5) failed to name Brewer in her written statement to the police.
In her initial testimony, Dodson claimed that she had worked with Brewer for six months at a Moraine Taco Bell restaurant and for six months at a Taco Bell located on Fiesta Drive. During cross-examination, she admitted that she had "probably" only worked with him at the Moraine restaurant for two months, rather than six. However, she testified that she had worked with Brewer at the Fiesta Drive Taco Bell for six months, and had worked with him at the Main Street Taco Bell for about two weeks prior to the robbery.[1] According to her testimony, Dodson and Brewer were friends, and she had given him rides home in the past.
A review of her testimony reveals that Dodson stated that she was able to identify Brewer by his voice even before she looked at him. She also testified that the robber walked in the same manner as Brewer. Furthermore, she testified that at one point she was only about a foot away from Brewer and she was able to distinctly view his features beneath the nylon hose he was wearing. Specifically, she testified that she could see dark pigmentation under the robber's eyes, a large nose, and a prominent chin — features that she associated with Brewer. Additionally, Giovanni Chenault, although testifying that she could not make a positive identification, testified that she could see Brewer's eyes and nose through the hose, and that she associated the robber's voice with Brewer. While Chenault's testimony, standing alone, would not be enough to convict Brewer, it does corroborate Dodson's claim that she could see the features of the robber. Given that Dodson knew Brewer well and had worked with him for a period of several months, we do not conclude that her identification of Brewer as the perpetrator must be disregarded because of the short duration of her observation of the perpetrator.
We next turn to the claim that Dodson incorrectly identified the color of the coat worn by the robber. In her statement to the police, Dodson wrote that the coat was "tan or dark." In fact, the coat was described at trial as being dark, rather than tan. Dodson's written statement, having described the perpetrator's coat, in the alternative, as "dark," was not altogether contradicted by the coat's description, at trial, as "dark." Any inconsistency here was a matter for the jury to consider in its determination of Dodson's credibility, but we cannot find that the jury lost its way in crediting Dodson's description of the coat worn by the perpetrator.
Brewer's next argument centers on Dodson's claim that the robber appeared to know where the safe, cooler and security camera were located. At trial, Dodson indicated that she thought it "strange" that the robber knew the location of these items. According to Brewer, had Dodson truly thought he was the robber, she would not have found it strange that he knew where these items were located, since he did work in the restaurant. He contends that the only reason that she found the robber's knowledge of the restaurant layout to be strange was because she "did not associate the robber as being [Brewer]."
The passage in the transcript to which Brewer refers us in support of this argument is as follows:
 Q. When he said that he wanted you guys to go into the walk-in, did you find that strange?
A. Yes.
Q. Why?
 A. He automatically pointed to it, knew where it was in the store.
Q. And what else was strange about that, if anything?
 A. That he actually referred to it as a walk-in. Most of my crew still refer to it as a refrigerator.
The mere fact that the prosecutor used the word "strange" when asking Dodson about the robber's knowledge of the restaurant's layout does not render Dodson's testimony incredible. In context, we are satisfied that the prosecutor's use of the word "strange," and Dodson's acceptance of that characterization, was intended to suggest that it was significant that the robber possessed this knowledge, because it strongly suggested that the robber had previous familiarity with portions of the restaurant with which customers would not ordinarily be familiar.
Brewer next argues that Dodson's identification was suspect because she failed to name him in her written statement to the police. During her testimony, Dodson explained her failure to name Brewer in the statement; she testified that she initially did not want to get him in trouble. However, she testified that she did mention his name to the police that day, and again during a police interview the following day. Moreover, an investigating detective corroborated her testimony when he stated that all three employees identified Brewer as the robber.
Finally, Brewer contends that Dodson's credibility was damaged because her testimony that Taylor was the first to name Brewer as the robber was contradicted by both Taylor and Chenault. However, we note that a review of Chenault's testimony indicates that she, also, stated that Taylor was the first of the three employees to voice the belief that Brewer was the robber.
We recognize that Chenault testified that she was not positive that the robber was Brewer, and we recognize, also, that Taylor testified that Brewer was not the robber. However, Chenault indicated that she thought that she recognized the robber's voice as Brewer's, and that she associated the robber's build and eyes with Brewer. Furthermore, there was testimony to indicate that Taylor and Brewer were involved in a relationship, so that the jury could reasonably discredit her testimony.
We next turn to Brewer's claim that the physical evidence does not support the conviction because the hair found in the robber's clothing, and the fingerprints found in the customer bathroom were not his. First, we note that the lack of matching fingerprints can be explained by the testimony that the robber was wearing gloves. Second, the forensic scientist who testified that the hair was not Brewer's also testified that the finding did not exclude Brewer as the robber, but merely indicated that Brewer had not left any hair on the clothing.
Finally, although Brewer did present the alibi testimony of his fiancée, mother, and brother, we cannot say that the jury lost its way by not crediting their testimony. Brewer's fiancée testified that she did not see him between the hours of 9:30 p.m. and 1:00 a.m.; therefore, she could not account for his whereabouts at the time of the robbery. Brewer's mother was unable to testify as to the exact time that he was at her house on the night of the robbery. Furthermore, his mother testified that Brewer and his brother went to the store at some point during the night, so she was not able to account for his whereabouts at the time of the robbery.
Brewer's brother testified that Brewer arrived at their mother's house at approximately 9:45 p.m., that they went to the store together at 10:00 p.m., and that they were gone for approximately forty-five minutes. He further testified that Brewer stayed at the house until 12:00 a.m., when he left to go to the bus stop. We decline to rule that the jury is required to believe the testimony of a criminal defendant's brother. Instead, we conclude that a reasonable jury could find a family member to be biased, and could determine that the testimony of the relative is not credible.
In sum, the jury found the testimony of Dodson, who positively identified Brewer as the robber, to be more credible that the testimony of Taylor and Brewer's brother. Furthermore, the lack of physical evidence in this case is not dispositive of guilt or innocence. Therefore, we cannot say that the conviction is against the manifest weight of the evidence.
Accordingly, Brewer's sole Assignment of Error is overruled.
 III
Brewer's sole Assignment of Error having been overruled, the judgment of the trial court is Affirmed.
WOLFF and YOUNG, JJ., concur.
[1] Although Brewer testified that he had never worked at the Fiesta Drive Taco Bell restaurant, the State presented rebuttal testimony of the manager of that restaurant, who testified that Brewer had in fact worked there.